1. WILLS—MENTAL CAPACITY—EVIDENCE—HYPOTHETICAL QUESTIONS—FOUNDATION FOR QUESTION.

Where the contestants of a will fail to introduce evidence of the existence, prior to the time the will was executed, of all the conditions upon which they propounded hypothetical questions to experts as to testator's mental capacity, such questions will be stricken out.

2. SAME—SUFFICIENCY OF EVIDENCE.

The fact that testatrix was of unsound mind at the time of her death, and for some months prior thereto, will not affect the validity of her will, made two years before, when there is no evidence that such a condition existed when the will was made.

3. SAME—UNDUE INFLUENCE—BURDEN OF PROOF.

Testatrix bequeathed one-half of her estate, consisting of $1,000 in stock, and the residue of her estate, consisting merely of certain articles of jewelry, to proponent, who was paid nurse and companion, and who had lived with her for six years, and one-quarter of the stock to each of her two sons. Her husband, with whom she had not lived for seventeen years, but who had supported her during that time, and the sons, contest the will. There had been no special alienation from her sons. *Held*, that the will was not so unnatural as to throw upon proponent the burden of proof as to absence of undue influence.

In the matter of the probate of the last will of Henrietta King, deceased, contested by legatees. Probate decreed.

George H. Finck, for proponent.

Warren, Boothby & Warren, for contestants.

VARNUM, S. Proponent's motions to strike out hypothetical questions propounded to contestants' experts, and the answers thereto, are granted; the contestants having failed to introduce evidence of the existence, prior to the time the will was executed, of all the conditions upon which said questions were based. Henrietta King, when about 51 years old, and on July 23, 1897, executed a paper now propounded as her will. She died March 18, 1899. By the terms of such will, she gave one-quarter of certain stock standing in her name to each of her two sons, and one-half thereof to one Annie Williams, who had lived continuously with her for some five or six years as a paid nurse or companion, who was devoted to her, and of whom she was very fond. The residue of her property she gave to said Annie Williams. As a matter of fact, it appears that the testatrix was the owner of only 10 shares of the stock in question, of the par value of $1,000, and that the residue of her estate consisted merely of certain rings and other articles of jewelry. The will is contested by Mrs. King's husband and her

two sons on all the usual grounds; the chief objections relied upon on the trial, however, being the unsoundness of mind of the testatrix, caused by disease and undue influence exerted upon her. It appears that the testatrix had separated from her husband, and had been living apart from him for about 17 years, but had been supported by him during said period. There does not seem to have been any special alienation from her sons, although some little disagreement with the wife of one of them caused her to leave his house, where she was then residing, about a year before her death, since which time she lived apart from all her family, and with her nurse, Annie Williams, above referred to, in various localities. I am satisfied that the statute regulating the execution of wills was properly complied with in this case. Although the principal beneficiary was living with the testatrix as nurse and companion, and therefore in a somewhat confidential relation, I do not find in the testimony anything to suggest any undue influence exerted by her, nor do I think the will so unnatural or unreasonable, under all the circumstances of the case, as to throw upon the proponent the burden of proof. The long separation of the testatrix from her husband, unexplained by the testimony, and the fact that each of her sons was earning his own livelihood and had his own family and interests, might reasonably have influenced the testatrix to give part of her small estate to her faithful companion and nurse. As to the mental soundness of the testatrix and her capacity to make a will, it has been shown that some 15 or 16 years before her death she had a slight paralytic stroke, which was followed later by another, and about 1891 by a more severe one, and that in consequence her powers of locomotion were considerably crippled, her mouth somewhat distorted, and her articulation rendered quite indistinct at times. It is useless for me to enter here upon any analysis of the testimony or the views of the experts. Suffice it to say that there is no sufficient proof offered to satisfy me that at the time the will was executed in July, 1897, the testatrix was of unsound mind or incapable of making a will. Some of the testimony offered might probably tend to show that at the time of her death, in March, 1899, and for some months prior thereto, the testatrix was of weak and possibly unsound mind, but there is nothing, in my judgment, in the evidence to show that such a condition existed when the will was made in July, 1897, about 20 months before her death. Submit decree admitting will to probate.

Probate decreed.